THE CHICAGO AND ALTON RAILROAD COMPANY

*v.*

DENNIS GLENNEY.

*Filed at Ottawa November 13, 1886.*

1. SURFACE WATERS—*diverting the flow thereof to the injury of lower proprietors—strangers contributing to the injury—liability.* Where a railway company diverts the flow of surface water from its natural channel, and conducts it through a ditch it has made along its right of way, and empties it into a slough at a point where it overflows the land of another, the company may be liable for such damages as result from its own acts, but it will not be liable on account of any water that may be brought into such railroad ditch by artificial drains of other parties, made without the sanction or approval of the company.

2. SAME—*presumption as to the right of other proprietors to use the new channel.* And where others owning land along the new water-way so constructed, drain the surface waters from their premises, by ditches, into that of the railway company, whereby the land of a lower proprietor is injured, it can not, in the absence of proof, be presumed that such parties have the right to turn water into the railroad ditch, or that they did so with the consent of the railway company.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Will county; the Hon. Charles Blanchard, Judge, presiding.

Mr. C. Beckwith, for the appellant:

No cause of action can arise to the appellee, unless it appears either that appellant has done some unlawful act, or a lawful act in an unlawful manner, which has resulted in injury to him or his property. It was appellant's duty to ditch its road-bed. The act of ditching may be placed upon the same footing with good husbandry, and for the results of good husbandry the dominant proprietor is not responsible to the servient proprietor. *Peck* v. *Herrington,* 109 Ill. 611.

Messrs. Wing & Goodspeed, and Mr. John Reynolds, for the appellee.

Mr. Justice Craig delivered the opinion of the Court:

This was an action brought by Dennis Glenney, against the Chicago and Alton Railroad Company, to recover damages for an alleged diversion of water by the company from its natural course, resulting in an injury to a certain portion of a tract of land owned by the plaintiff.

The plaintiff, as appears from the record, owns the north-east quarter of section 4, township 32, range 9, east of the third principal meridian, in Will county. The railroad runs north-east and south-west through this township. Running from the north, it enters the township near the half section line of section 3, and it leaves the town on the west line, near the half section line of section 19. The road, as located, does not run over any part of plaintiff's land. The nearest approach to plaintiff's land is at the south-east corner, where it is ten rods distant from the quarter corner. Kilgore slough heads about three-quarters of a mile south-east of the railroad, in this township. It runs across the railroad and crosses the

plaintiff's land, running in a north-westerly direction, until it empties into the Claypool run, several miles distant from plaintiff's land. The land in the locality is generally flat, but at the same time it slopes gradually from the south-east to the north-west. Braidwood is located on sections 7 and 8, some two miles south-east of plaintiff's land. Between plaintiff's land and Braidwood there are certain valleys and corresponding ridges, running from south-east in a north-west direction. In the construction of the railroad across these depressions, the flow of water was, to some extent, no doubt, interrupted, and the railroad company, for the purpose of relieving its track of water, fifteen years before the commencement of this action constructed a ditch along the east side of its track, from a point a short distance south of Braidwood, to Kilgore slough. In consequence of the construction of this ditch, the plaintiff claims that the volume of water in Kilgore slough has been increased to such an extent, that in a wet season of the year the slough overflows upon a portion of his land, and that some forty-five acres of the west half of the north-east quarter of section 4 has been seriously damaged; that prior to the construction of the ditch it was fine meadow land, but since that time it has become almost worthless.

On the trial of the cause, among other defences, the railroad company claimed that other persons had constructed drains into the ditch which it had constructed along its line of road, and thus greatly increased the flow of water into Kilgore slough, and that the railroad company could not be held responsible for such increased flow of water. Upon this branch of the case, the witness Riley, on his cross-examination, testified as follows: "The water complained of comes from off the prairie—off section 17. Section 17 lies south-east of Braidwood. They opened ditches and let the water from section 17 into the railroad ditch. I don't know who opened the ditches—the railroad company did not. The water from section 17 would not have hurt me or Glenney if it had not been

let into the ditch. There is a ditch cut from section 17 down to the railroad ditch. The railroad company did not cut this ditch, and there are other cuts running into this ditch. There is a road near me with ditches on either side, which ditches run into the railroad ditch. The railroad company did not dig these ditches. There is a large body of low land to the east of the railroad, through which a road is graded, with ditches on either side, running into the railroad ditch."

. Thomas Conners, on the same question, on cross-examination, testified as follows: "There is another inlet close to my house. It was dug by William Henneberry. It runs considerable water into the railroad ditch. All the farmers all along on the east side of the railroad ditch drain to the northwest, and the water is bound to come down into this ditch. There are ditches that drain directly into the railroad ditch along the roads from place to place. The railroad company didn't dig those ditches. I know that the railroad ditch runs for a number of days with a steady stream of water when we have a heavy rain."

Other evidence of a like character was introduced on the trial, but it will not be necessary to refer to it here. We have alluded to the evidence for the purpose, merely, of showing that the record contained evidence of this character upon which an instruction to the jury might be predicated. Upon this branch of the case the defendant asked an instruction, as follows:

"The jury are further instructed, that although they may find, from the evidence, that the defendant, in the construction of its road, excavated a ditch on its own right of way, along the east side of its track, through which water, at certain seasons of the year, is discharged and carried upon the lands of the plaintiff, the defendant is not liable for damages on account of any water that may be brought into such ditch and discharged upon the land of the plaintiff by artificial ditches extending into said railroad ditch, and made without

the consent of the defendant. The defendant is only liable to the plaintiff for such damages as may ensue from its own acts or the acts of its agents. And if the jury shall further believe that the waters from adjoining lands have been conducted into such railroad ditch by artificial ditches made without the consent of the defendant, thereby increasing the flow of water through such ditch and upon the plaintiff's land, the defendant is not liable to the plaintiff for damages caused by water artificially brought into its ditch from adjoining lands without its consent."

This instruction was refused, and the ruling upon it presents one of the questions for decision.

We are aware of no rule of law under which it can be held that the appellant is responsible for damages which did not result from its own act or omission, but arose from the act of another. There was evidence before the jury that much of the water complained of, which flowed down the railroad ditch, had been conducted therein by artificial ditches constructed by other parties, with which the railroad company was in no manner connected, and the purpose of the refused instruction was to inform the jury that the company was not liable for damages caused by another party. The principle announced in the instruction was clearly correct. If the appellant diverted the flow of water from its natural channel, and conducted it through a ditch which it had constructed, and emptied it into Kilgore slough at a point where it might overflow appellee's lands, it may be liable for such damages as result from its own acts. But upon what principle, it may be asked, is it to be held responsible for damages caused or produced by other parties? It can not be presumed that any person south and east of the railroad in this locality had a right to turn water into the railroad ditch, or, if they did so, that it was done by and with the consent of the railroad. No such presumption prevails. We regard it as a plain proposition, that whatever damage was done by turning of water

into this ditch by other parties, without the sanction or approval of appellant, they alone must be held liable.    The instruction was correct, and the court erred in refusing it.

The judgment of the Appellate and circuit courts will be reversed, and the cause remanded to the circuit court.

*Judgment reversed.*