## CHICAGO AND ALTON RAILROAD COMPANY
## v.
## THOMAS CONNORS AND WILLIAM CONNORS.

*Railroads—Diversion of Surface Water—Liability for Damages—Instructions—Evidence—Statute of Limitations—Continuance—Practice—Objections First Raised in This Court—Election.*

1. Where a railroad company diverts the flow of surface water from its natural channel and conducts it through a ditch it has made along its right of way to a point where it overflows the lands of another, the company is liable for the resulting damages.

2. Where the defendant proceeded at the trial on the theory of his liability, if the plaintiff proved the facts as alleged in the declaration, he can not raise the question of his liability in this court.

3. An objection that an instruction given by the court below did not sufficiently guard the rights of the appellant, touching a question not presented by his instructions, can not be first raised in this court.

4. In the case presented, it is *held:* That the evidence sustains the verdict for the plaintiff; that there was no substantial error in giving and refusing instructions; that the refusal of the court to require the plaintiff to elect whether to proceed for the rental value or for the permanent injury to the freehold, worked no injury to the defendant; that there was no error in overruling the defendant's motion for a continuance; and that certain objections can not be first raised in this court.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

In connection with this case see the following and related case of the Chicago & Alton Railroad Company v. Riley.

Messrs. BROWN & KIRBY, for appellant.

This railroad was constructed by authority of law prior to the adoption of the Constitution of 1870, and there was no averment in the declaration that anything has been done, nor is there any evidence that anything has been done by the railroad company since that time to throw any water upon the lands of appellee.

The evidence shows that the road was built prior to the pur-chase of the land by appellee, under legislative authority. and that the ditch was constructed some twenty years ago. There was no averment that the road was constructed or maintained negligently, nor is there any averment that the ditch was neg-ligently or unnecessarily constructed. The consequence is that appellee must have recovered simply for the consequences of the construction of the road and its maintenance in a manner authorized by law. In these circumstances appellant contends that if any damage at all was sustained by appellee by means of the construction of the road and its maintenance, or by the digging of the ditch which is a necessary and essential part of the maintenance of the road bed, and which is required by law of the defendant, such damage comes within the maxim of the law, *damnum absque injuria;* that by the lawful con-struction of the road, in a lawful manner and without negli-gence, no legal injury can result to the appellees. They are not within the principle of the new Constitution, which says that private property shall not be taken or damaged for pub-lic use without just compensation. Since the adoption of that clause of the Constitution another rule may be said to have arisen.

The Supreme Court of this State in Peck v. Herrington, 109 Ill. 611, held that the dominant proprietor could make no improvements upon his land consistent with good husbandry, irrespective of its effect upon the servient proprietor. So we contend in this case that the management of this railroad in a manner consistent with public safety, and without negligence or unskillfulness, can not be deemed and taken to be the invasion of the private right of any servient proprietor. See J., N. W. & S. R. R. Co. v. Cox, 91 Ill. 500; Nevins v. Peoria, 41 Ill. 502; Gillham v. Madison, 49 Ill. 484; Shane v. Kansas City, etc., R. R. Co., 71 Mo. 237; Abbott v. Kansas City, etc., R. R. Co., 83 Mo. 271; Jones v. St. L., I. Mt. & T. R. R. Co., 84 Mo. 151; Moss v. St. L. R. R. Co., 85 Mo. 86; Gannon v. Hargadon, 10 Allen, 106; Luther v. Winnissinmet Co., 9 Cush. 171; Flagg v. Worcester, 13 Gray, 601; Dickinson v. Worces-ter, 7 Allen, 19; Bates v. Smith, 100 Mass. 181; Merrill v.

Hurley, 120 Mass. 99; Hoyt v. City of Hudson, 27 Wis. 656; Cairo & Vincennes R. R. Co. v. Stevens, 73 Ind. 278; Taylor v. Fickas, 64 Ind. 167; Schlicter v. Philipsy, 67 Ind. 201; Shelbyville v. Green, 99 Ind. 205; Weis v. City of Madison, 75 Ind. 241; Benthall v. Seifert, 77 Ind. 302 ; Cairo, etc., R. R. Co. v. Howry, 77 Ind. 364; Goodale v. Tuttle, 29 N. Y. 459; Waffle v. N. Y. C. R. Co., 58 Barb. 413; Imler v. Springfield, 55 Mo. 119; Dickenson v. Worcester, 7 Allen, 16; Parks v. Newburyport, 10 Gray, 28; Flagg v. Worcester, 13 Gray, 601; Bowlsby v. Speer, 31 N. J. L., 351 ; Sowers v. Skiff, 15 La Ann. 300; Martin v. Jitt, 12 La. 503; Gibbs v. Williams, 25 Kas. 214.

Many other cases can be found in which it is held that, at common law, one in the exercise of lawful dominion over his own land may divert the surface water to such extent as is consistent with good husbandry. The same rules, by analogy, would apply to the construction of railroads; if any injury whatever has resulted to the property of the appellees by the construction of this railroad, it is a mere incident to the lawful exercise of the rights and powers which have been vested in it, and no recovery can be had for it. Roberts v. Chicago, 26 Ill. 249; St. L., V. & T. H. R. R. Co. v. Haller, 82 Ill. 208 ; Murphy v. Chicago, 29 Ill. 279.

Mr. R. M. WING, for appellees.

LACEY, J. Some twenty-six years ago the appellant constructed a railroad from the point where Braidwood is now situate, to Wilmington, under and by authority of the acts of the Legislature, and near to the land of the appellees lying between those points. The appellees sued appellant in an action on the case to recover damages alleged in their declaration to have been done to their land by means of flooding it by water, by the appellant digging a certain ditch along a portion of said railroad close to their land, several years subsequently to the building of the road and while the appellees were the owners of the land, which ditch collected a large amount of surface water from a distance and cast it upon their land, which, without the ditch, could never have reached it.

The situation of the railroad track and the facts and circumstances in relation to the location of the ditch and the flooding of the land are the same as in the case of the C. & A. R. R. Co. v. Glenney, decided by this court December 4, 1885, and reported in 19 Ill. App. 639, and also on appeal to the Supreme Court decided by that court and reported in 118 Ill. 487. The appellees' land in part lying immediately west of and adjoining the Glenney tract, the circumstances of the alleged flooding are the same. For a more particular statement of the facts those two opinions are referred to. The recovery in this case was $800.

It is first contended by the appellant that there was no cause of action against it, for the reason that the appellant constructed its railroad in a lawful manner and dug the ditch to drain it without negligence.

The case of Herrington v. Peck, 109 Ill. 611, is cited and a line of cases in Missouri, Massachusetts and other States, which hold: That, "where a railroad company condemns land for its right of way by proper methods, and without negligence or unskillfulness or mismanagement constructs its road and the embankments therefor, obstructing no natural channel of water thereby, the injuries done by such embankment, by causing the flow of water over the land of adjoining proprietors, will be regarded as the natural incidents and consequence of that which the corporation by reason of condemning the land had acquired the right to do. For such injuries no action will lie. The right of a railroad company after having constructed its railroad to make such changes in it as experience may designate as proper, is of necessity a continuous one." Citing Moss v. St. L. R. R. Co., 85 Mo. 86; Gannon v. Hargadon, 10 Allen, 106; Bates v. Smith, 100 Mass. 181; Cairo & Vincennes R. R. Co. v. Stevens, 73 Ind. 278. By a long line of decisions by the Supreme Court of this State, a rule not so broad as that announced in the above-decisions has been adopted. In J., N. W. & S. R. R. Co. v. Cox, 91 Ill. 500, the Supreme Court hold, that a railroad has no right to bring a body of unaccustomed water upon the farm of another by means of its ditches, but on the contrary it is its duty to pro-

vide ample and sufficient means for the egress therefrom, nor does the fact that a land owner has deeded to the railroad company the right of way across his land give the company the right to flood his remaining land "with water brought by it from lands other than his, the natural drain of which would have carried it far from his premises." See also the same rule announced in Nevins v. Peoria, 41 Ill. 502; Gillham v. Madison Co., 49 Ill. 484.

In the case at bar the proof tends to show that much of the water brought to appellees' land by the ditch complained of, dug on the southeast side of the appellant's railroad, was conducted there from a distance, which, without the ditch, did not naturally reach appellees' land.

But it is not necessary to discuss the question of the liability of the railroad company for damages done by digging the ditch in question and conducting water onto the lands of appellees in the manner claimed by them, as the Supreme Court in the exactly similar case to this of C. & A. R. R. Co. v. Glenney, 118 Ill. 487, has recognized the liability of the railroad company, if the facts are proven as appellees allege. The court says:

"If the appellant diverted the flow of water from its natural channel and conducted it through a ditch which it had constructed and emptied it into Killgore Slough at a point where it might overflow appellee's (Glenney's) land, it may be liable for such damages as resulted from its acts," etc.

This is exactly what appellees claimed and undertook to prove in this case, and, if they proved it, the Supreme Court hold the appellant would be liable. So it will not be necessary to discuss the question further. It may be remarked, however, that the case in the court below was tried by appellant on the theory of their liability, in case the appellees proved the allegations of the declaration. By the 8th, 9th and 13th instructions, given to the jury at appellant's instance, it was clearly recognized that appellees had the right to recover if appellant diverted certain waters "to such an extent as to cause the same to flow on the plaintiff's land," provided the damages done thereby was ascertainable. Under these circum-

stances it is quite too late to raise the question of liability of appellant for the first time in this court.

And the jury, by appellant's 12th given instruction, was clearly told that, "where tracts of land adjoining each other are so situated that water falling or collected by melting snow, or the like, upon one, naturally descends upon another, it must be suffered by the owner of the lower tract to be discharged upon his land, for the owner of the upper tract in such a case has a natural easement, as it is called, to have the water that gathers on his land flow off on the field below, and he may even accelerate the flow by digging ditches and drains so long as he follows the natural depression of the land."

Appellant received, in the court below, the benefit of the jaw as it claimed it to exist, and upon these issues the cause was tried and resulted in appellees' favor. The appellant's brief is chiefly taken up in a discussion of a different theory of the law than the appellant admitted existed at the trial, and it asks this court to hold that the evidence, as applied to such principle, "discloses no cause of action against appellant." From what has been said it will be seen that we are unable to do this.

It is further objected that appellees' first instruction did not sufficiently guard the rights of appellant in regard to making it liable for damages done by water conducted into the railroad ditch by means of the ditches of other parties not authorized or permitted by appellant. That instruction, however, only has reference to the water flowing off in a different direction, and not water that had been brought onto the railroad right of way by artificial means. It does not appear that this defense, which was raised in the Glenney case, was thought of on the trial; at least it was not attempted to be so raised by appellant in any way. Appellant's own instructions in regard to its liability were equally faulty, if there was fault with the appellees. If appellant desired the same question raised as was done in the Glenney case, it should have asked for an instruction to that effect; not having done so we think it too late to raise the question here for the first time.

We see no error in overruling appellant's motion for a con-

tinuance, more especially as the evidence developed the fact that appellees had no interest in the question of the value of the underlying coal, except the reserved royalty damages to which, by reason of lessened income, an account of it dropped out of the case, as there appeared to be no proof on the subject, and the jury could not have taken that into account. The value of the land as coal land after it appeared from the undisputed evidence that appellees had given a perpetual lease on it for the coal interest to a third party, was not involved, and no injury resulted to appellant from overruling the motion for a continuance.

We do not feel justified in reversing the judgment on account of lack of evidence to sustain the verdict. We think that if the jury believed the appellees' evidence, which they had a right to do, the evidence sustains it.

It is insisted by counsel for appellant that the entire cause of action was barred by the Statute of Limitations, because, as claimed, the evidence shows that the railroad and ditch were constructed and dug more than five years before the commencement of this suit; citing C. & E. I. R. R. Co. v. McAuley, 121 Ill. 160. This point also seems to be an after-thought, for on the trial the appellant's instruction to the jury plainly conceded its liability for five years' damages, if any were shown, immediately preceding the commencement of the suit, admitting that the nuisance, if any, created by the appellant was, as to appellees, continuous, and that action need not necessarily be brought for the entire damages at one time, but that suit for continuing damages might be brought.

By the 21st instruction given at the instance of appellant, the court told the jury "that, under the pleadings in this suit, if they shall find that the plaintiffs are entitled to money damages for the rents and profits of such real estate, or any part thereof, then such damages must be limited to the five years next preceding the commencement of this suit, which was July 7, 1883."

It would be unfair and unjust to allow appellant to raise the question on the law, as it now does for the first time in this court, after procuring the jury to be instructed differently in

the court below. But aside from this view, we think that, while the railroad and the embankment may be regarded as permanent, a mere ditch like the one in question being dug years after the railroad and bank was erected, may not be regarded as of such a permanent nature as to compel suit for the damages to be brought on the supposition that the ditch would continue for all time as it then was, but rather on the supposition that its defects would be speedily remedied.

The last objection of appellant is that the court erred in admitting improper evidence for the appellees and in refusing to require the appellees to elect whether they would proceed for damages for the rental value or for the permanent injury to the freehold. We do not think, under the state of the evidence, that this objection is at all tenable. It does appear that there was some evidence going to show what the land was worth for the underground or coal privileges, and those privileges would be damaged as far as the sale of the coal was concerned on account of the ditch complained of flooding the land while the ditch existed in the form it was. But it afterward developed in evidence that the appellees had disposed of the mining privileges for all time to a third party, reserving a royalty. Hence there could be no recovery for such injury to the inheritance as coal land, for the reason that that interest had already been disposed of and no complaint was made that it had been leased at a less price on account of the alleged flooding.

At the appellant's instance, by the 11th instruction given for it, the jury was clearly told that if the coal interest had been by appellees rented to a third party for a royalty, and that such contract was in force and such party paying royalty, etc., then "the plaintiffs can not recover in this suit for any damages to said land as 'coal land,' or for rents and profits for coal underlying said land; and the jury will so find." There was no question but the proof filled the hypothesis of the instruction, and the jury must have obeyed it. There is no objection raised in appellant's brief as to the modification of any of appellant's instructions, and none as to appellees' given instructions, except as we have mentioned above. There was

no proof whatever introduced as to any depreciation in the value of the land on account of alleged injury, except as to the coal interest, and this question having been disposed of in the way it was, no injury could, or, as we think, did result to appellant on account of the court's refusal to compel the appellees to elect which kind of damages they would proceed for under the declaration, or in admitting evidence as to the damage done to the coal interest, which was done before the appellees' lease of such interest had been shown. We therefore think that there is no sufficient error in the record to require reversal. The judgment is therefore affirmed.

*Judgment affirmed.*