ILLINOIS CENTRAL RAILROAD COMPANY

v.

PAUL HEISNER.

*Railroads—Wrongful Construction of Ditches by Railroad Company—Action for Flooding Plaintiff's Land—Damages, Whether Proximate—Vis Major—Practice.*

1.   This court will not in a given case consider points raised by appellant in his reply brief which were not presented in his opening brief.

2.   Where a railroad company constructs ditches along its road, and by that means carries water from a place whence it would not otherwise have come, and overflows the land of any person, the company is liable to such person for all the proximate damages thereby caused.

3.   Heavy and unusual rainfalls are to be anticipated and provided against, even though they only occur at long intervals, and are not to be regarded as coming within the principle of *vis major.*

4.   Damages caused by the spreading over plaintiff's land of the seed of noxious weeds by the water brought by defendant's ditches, is not too remote to be recovered for.

5.   If the water wrongfully brought by defendant's ditches alone would not have overflowed plaintiff's land without the addition of water cast into the ditch by means used by plaintiff and others, then, for the damage caused by the water alone there could have been no recovery; otherwise as to the damage done by the weed seeds brought from a distance.

[Opinion filed May 20, 1892.]

APPEAL from the Circuit Court of Livingston County; the Hon. N. J. PILLSBURY, Judge, presiding.

Messrs. STRAWN & NORTON, for appellant.

Messrs. McILDUFF & TORRENCE, for appellee.

MR. JUSTICE LACEY. The cause of action as charged in appellee's declaration was, as alleged therein, the wrongful construction of ditches along either side of the railroad of appellant leading from one mile west of appel-

lee's land thereinafter named, and out of the course of the natural flowage of water, thereby conducting water and casting it upon appellee's land by which the road passed, that except for the ditches would not have come upon it; that the land was good and free from burrs and productive; that the water thus carried and cast upon appellee's land was gathered from places where cockle-burrs abounded, a weed very injurious to land and destructive to crops, and discharged them on said land, whereby it became foul and injured in value, and was destroyed for agricultural purposes. The damages for which recovery was sought was by the destruction of crops by the water thus wrongfully diverted and cast upon appellee's growing crops, and also seeding his land with noxious weeds, by wrongfully casting weed seed upon it as alleged. The case went to trial before a jury, the result being a verdict for appellee of $350 damages, and judgment thereon. From this judgment this appeal is taken.

The errors relied on by appellant are, as insisted on, that the judgment was not supported by the evidence either as to the cause of accident or the amount of damages, and that the court below erred in giving and refusing instructions and modifying appellant's offered instructions, and giving them as modified.

It was also assigned for error that the court below erred in allowing improper evidence to go to the jury and excluding proper evidence. This last error was not insisted on in appellant's opening brief, and it comes too late to present the point in its reply brief. It would be very unfair to appellee to allow practice of this kind to prevail, and would deprive the court of the benefit of any argument appellee might make, had the point of objection been made at the proper time. We shall therefore dismiss this objection without further notice.

The appellant's line of railway running from Kankakee to Minonk was built in 1880, and ran east and west on the half section line of sections 19, 20 and 21, T. 28, R. 5, east 3d P. M., in Livingston County, Ill.

Naturally the drainage of these lands was toward the north into the Vermillion river; and the land was naturally low and wet prior to the building of the road. These lands were ditched by the farmers to some extent across the present line of the railroad track to the north into the Vermillion river, from a half to a mile north of the railroad. After the railroad was built, cutting off this flow of water to the north, the farmers neglected the ditches running from the railroad north, and among them, appellee, who filled up one of his ditches running north from the railroad.

The appellant afterward deepened and enlarged the excavations originally made on both sides of the road-bed and carried all the accumulated water coming from the south half of these sections, east to the Vermillion river. There does not seem to be much complaint of any overflow of the water carried east along these ditches made by the appellant on the appellee's land, being the south half of the northeast quarter and the northwest of the northeast quarter of section 20, until the latter part of May and the fore part of June, 1888, when a heavy and rather unusual rainfall caused the railroad ditch on the north side of the roadbed at the southwest corner of appellee's northwest quarter of section 20 to overflow and submerge a portion of appellee's land, which is the principal injury complained of. There was a culvert under the road-bed, at the point of the discharge of this water from the north to the south. The evidence tends to show that the water that overflowed appellee's land came from the railroad ditches through from the south ditch under the culvert and the north ditch could not hold it and it overflowed. The banks were low and the ditches not large enough to hold the water. It overflowed a considerable portion of appellee's land and ran for two or three days before it settled down. If the railroad had not been constructed in the manner it was the water would have gone north to the river, or at least a great portion of it. Whenever there were heavy rains the water would run over appellee's land, and when there was much water the ditches could not carry it. There can be no question from the evi-

dence that the railroad ditches diverted a large amount of water through them past appellee's lands that otherwise would have gone north and would never have reached them.

We understand the law to be well settled that where a railroad company constructs ditches along its railroad and carries water by that means from a place where it would otherwise not come and overflows the lands of another, it is liable to such person for all approximate damages thereby caused. This principle of law is so well settled in this State that it is unnecessary to cite many authorities. See, however, the case of C. & A. R. R. Co. v. Conners, 25 Ill. App. 561, and cases there cited; nor are such damages to be excluded on account of the railroad company having procured the right of way or condemned it from the person so damaged. O. & M. R. R. Co. v. Wachter, 123 Ill. 450; Same v. Schaffer, 124 Ill. 112; Chicago & Alton R. R. Co. v. John Henneberry, in this court, opinion filed December 2, 1891.

Notwithstanding a railroad procures the right of way, good railroading requires that damages of the kind mentioned shall not be permitted to occur on account of the construction of the railroad. The railroad is absolutely bound to conduct away such water so brought from a distance out of its natural course from the premises to which it is brought, and we can conceive of no case where it would be impracticable to do so. Hence damages of this nature are not presumed to be taken into account when the right of way is granted or procured. But it is contended by counsel for appellant that the overflow complained of was of such an extraordinary nature that it must be regarded as a visitation of Divine Providence, and not one that the appellant was bound to foresee and provide against; and it is objected that the court erred in not instructing the jury properly on this point and submitting to it such question of fact. We have examined the evidence carefully on this point and find nothing in it to justify the submission of such a question. The rainfall, it is true, that occurred in May and June, 1888, was an unusually heavy one, and it

continued to rain for seven or eight days successively, which was also rather an unusual occurrence. But it was such a rainfall as may be anticipated, as like rainfalls often take place, covering large areas of country, and in fact, it is admitted that the flood of 1869 which took place in this same neighborhood, equaled, if it did not exceed, this one. The law requires that heavy and usual rainfalls must be anticipated, though not occurring annually and save at long intervals, as well as those that occur annually. The case of the Ill. Central R. R. Co. v. Bethel, 11 Ill. App. 17, was not similar in its facts, to the case at bar. That case was a most extraordinary one, such an event never having been known in the history of the country. The rainfall in that case, or cloud-burst, or whatever it may be called, was in the nature of a cyclone and not reasonably to be anticipated or guarded against. It was clearly a case within the rule that regards certain extraordinary occurrences as a visitation of God, like a stroke of lightning or a cyclone. We will not then consider the question further in regard to the instructions bearing on that point. We do not think the jury would have been justified in finding from the evidence that the rainfall that caused the damages in question was anything more than a series of heavy rains, that may reasonably be expected in this country at any time in the spring of the year.

It is contended that the damages complained of were not caused by act of appellant alone, but by appellee himself, by filling up his ditches leading the water off from the north ditch of the railroad northwardly, and various other persons, who had constructed like ditches and tile drains running south into the railroad ditch, which afterward contributed to the overflow of appellee's land. We are not aware of any evidence tending to show that the tile ditches, even if made after the railroad ditch was dug and before the overflow complained of, caused any greater flow of water into the railroad ditch than would have come there from the natural surface; and besides this, the instructions of the court expressly limited the recovery to the overflow

caused by the railroad ditch, excluding any damages caused by the contribution, if any, of water, by means of the tile ditches, and the means of appellee obstructing his own ditches. This was all that was necessary. The criticism made by counsel for appellant as to the insufficiency of the instructions in this respect is not well taken.

It seems to be thought by appellant's counsel that if the evidence should show that appellee, by means of his embankments, had thrown any extra water into the railroad ditch, that would absolve the railroad company from all liability for damages caused by the water wrongfully cast by it on appellee's land. We do not understand that to be the law. If the water cast wrongfully by the railroad ditches alone onto appellee's land would not have been sufficient to have overflowed the land without the addition of the water cast into the ditch by means used by the defendant himself, and other persons, then for the damage done by the water alone there could be no recovery; but on the contrary, if the water brought from a distance, whence it would not have come but for the railroad ditch, were sufficient to overflow and damage appellee's land without the aid of any other water, then to that extent, appellant would be liable, and the jury were the judges, under the evidence, of these facts. It is not like a case where damages caused by a negligent act of one party is contributed to by the injured party. In such case there can be no recovery. In this case it is quite different. The appellee in no way contributed or assisted in building the railroad ditch that brought the water from a distance and cast it onto appellee's land. Plaintiff's instruction No. 7, while not pertinent to the issue as raising the question of benefits by appellant's railroad ditch and holding that they could not be offset by the damages done, we can not regard as harmful to appellant. We do not regard appellee's eighth instruction as erroneous. The seeding the land with cockle-burrs was the injury contemplated by this instruction, and not the damage done by the water. Hence, any water carrying those cockle-burrs from a distance whence

they would not have been brought but for the waters, would cause the damage, and such damage would not have been caused by the waters that would have originally come there; and we think the complaint that the jury could not understand it, is not well taken; nor do we regard damages done by the distribution of cockle-burr seed on appellee's land too remote for recovery. Such damages could reasonably be foreseen by the appellant when unlawfully constructing their ditch. The ninth instruction of appellee is not erroneous, as we have already shown, as the granting of the right of way by appellee for its road-bed over his land did not have the effect to release damages of the nature sued for. Nor is the appellee's seventh instruction, to the same effect, erroneous. Neither are the fourteenth, fifteenth and sixteenth for a similar reason erroneous.

From what we have said concerning the evidence as to the nature of the rainfall in the spring of 1888 not being an act of Providence in the legal contemplation of that term, it follows that the striking out of the word "usual" and "ordinary" by the court from appellant's second instruction, and giving it as modified, was not erroneous. Neither was the modification of the defendant's fourth instruction erroneous, as we have shown in what we have said concerning appellee's contributory negligence in casting water into the railroad ditch. Neither was the refusal of appellant's first refused instruction for the same reason. The refusal of appellant's third instruction refused was not erroneous under the evidence, as we have shown by what was said concerning the rainfall coming under the category of "extraordinary events." Neither was the refusal of the fifth refused instruction, as the point raised has been fully covered by other instructions. The seventh refused instruction was properly refused, as well as the tenth, eleventh, twelfth, thirteenth and sixteenth, as will be seen by reference to what we have said in commenting on other points in the case. A complaint is made as to the amount of damages allowed. We have examined the evidence closely and find that the amount found could be reasonably justified

from the evidence, and that the verdict of the jury is not so manifestly against the weight of the evidence as to justify this court in reversing the judgment for that reason. Counsel for appellant in his reply brief again takes up the question of excess of damages and bases his objections upon an entirely different theory from what was presented in his argument in chief, and the case of Kankakee & Seneca R. R. Co. v. Horan, 17 Ill. App. 650, is cited and several others of like tenor. As we have already remarked, we do not approve of this mode of presenting a case, and are inclined only to consider the objections made in appellant's brief in chief. But if we should consider it, we would be inclined to the view that in the manner in which the case was presented to the jury by both the appellant and appellee on this question of damages, this court could not say that the appellant is in a position to take advantage of any supposed errors in presenting the question of damages to the jury.

The point that there is no precise proof of what the oats were worth when the overflow came and damaged them, seems to have been suggested to the appellant's counsel since filing his brief in chief, and hence, being a new theory of defense, it was not made at the trial in the court below. If appellant had desired, it could have opened up that question before the jury by cross-examining the witnesses on that point and introducing evidence on its own behalf. But, having submitted the case on the evidence, and in our view sustaining the verdict, the points made in opposition to it will be overruled.

The judgment of the court below is affirmed.

*Judgment affirmed.*