CHICAGO & ALTON RAILROAD CO.

v.

DENNIS GLENNEY.

*Railroads—Ditch—Damages for Flooding Plaintiff's Lands—Former Adjudication—Limitations—Want of Plea—Stipulation.*

1. An action lies against a railroad company for damages where, by making new and unnatural channels, it has thrown surface or other water upon the plaintiff's lands.

2. In the case presented, the defendant is concluded by a former adjudication.

3. The defense of the statute of limitations can only be interposed by plea. A stipulation limiting the plaintiff's claim for damages within five years is not equivalent to a plea of the statute of limitations, nor does it amount to a waiver thereof.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Will County; the Hon. GEORGE W. STIPP, Judge, presiding.

Mr. WILLIAM BROWN, for appellant.

The appellant was the owner of a strip of land one hundred feet wide from Braidwood to Kilgore slough. It made use of it for a lawful purpose, *i. e.*, the construction and operation of a railroad. The construction and operation of the road is, in a legal sense, a unit, which includes the doing of all legal acts necessary to the accomplishment of the end. The cutting of ridges, the filling of low places, and the ditch-

ing along the road bed, as well as the laying of rails and running of trains, are all lawful acts of enjoyment of proper- ties and franchises, and it is contended that so long as the railroad continued to use its property in a lawful manner, no injury which therefrom results to another is an actionable injury.

It is legally confessed, since there is no averment to the contrary, that all of the acts and doings of defendant were necessary to the exercise of its franchises, and that its work was skillfully performed.    These cases are common in the courts of the various States, and we beg the consideration of some of them.    Shane v. Kansas, etc.. R. R., 71 Mo. 237; Abbott v. Kansas City, etc., R. R., 83 Mo. 271; Jones v. St. Louis, Iron Mt., etc., R. R. Co., 94 Mo. 151; Moss v. St. L. R. R. Co., 85 Mo. 896 ; Gannon v. Hargadon, 10 Allen, 106 ; Luther v. Winnissimmet Co., 9 Cush. 171; Flagg v. Worcester, 13 Gray, 601 ; Dickinson v. Worcester, 7 Allen, 19 ; Morrill v. Hurley, 120 Mass. 99 ; Hoyt v. The City of Hudson, 27 Wis. 656.

Probably the clearest cases upon this question are to be found in Indiana, where it is held that the railroad company has the right to dig ditches and build a levee within the limits of its own land, and is not responsible for consequences if they overflow the lands of adjoining proprietors.    Cairo & Vin- cennes R. R. Co. v. Stevens, 73 Ind. 278; Taylor v. Fickas, 64 Ind. 167; Schlicter v. Philipsy, 67 Ind. 201; Shelbyville, etc., v. Green, 99 Ind. 201; Weis v. City of Madison, 75 Ind. 241; Benthall v. Seifert, 77 Ind. 302; Cairo, etc., R. R. Co. v. Howry, 77 Ind. 364.

In further support of the propositions here submitted we beg to refer to the following cases:    Goodale v. Tuttle, 29 N. Y.459; Waffle v. N. Y. C. R. Co., 58 Barb. 413; Imler v. Spring- field, 55 Mo. 119; Dickenson v. Worcester, 7 Allen, 16; Parks v. Newburyport, 10 Gary, 28; Flagg v. Worcester, 13 Gray, 601; Bowlsby v. Speer, 31 N. J. Law, 351; Sowers v. Skiff, 15 La. Ann. 300; Martin v. Titt, 12 La. 503; Gibbs v. Will- iams et al., 25 Kan. 214; Ang. on Water Courses, p. 122, Sec. 108; Gould on the Law of Waters, Chap. 9, Secs. 263 to 272.

If any injury whatever has resulted to the property of the appellee by the construction of this railroad, it is a mere incident to the lawful exercise of the rights and powers which have been vested in it, and no recovery can be had for it. Roberts v. Chicago, 26 Ill. 249; St. L., V. & T. R. Co. v. Haller, 82 Ill. 210; Murphy v. Chicago, 29 Ill. 279.

There was a stipulation entered into between the parties that the plaintiff does not claim for injury prior to five years before the commencement of the action, which was in September, 1883. The legal effect of this stipulation was, that the plaintiff should show a cause of action arising within five years. If, then, the cause of action was co-existent with the construction of the road and ditch, which are expressly averred to have been the cause of the wrong, the fact that they were continued does not show a cause arising within the period of the statute. They constitute one permanent legal structure; the things are but parts of the whole. C. & E. I. R. Co. v. McAuley, 121 Ill. 160; Powers v. City of Council Bluffs, 45 Iowa, 652; Troy v. Cheshire, 3 Foster, 83; C. & E. I. R. Co. v. Loeb, 118 Ill. 203.

Messrs. R. M. Wing & Charles F. Goodspeed, for appellee.

All the circuit judges of the ninth judicial circuit, the Appellate Court of the second district and the Supreme Court of the State, have held that these facts entitle the plaintiff to a judgment against this appellant. Chicago & Alton R. R. Co. v. Glenney, 19 Ill. App. 639; Chicago & Alton R. R. Co. v. Glenney, 118 Ill. 487; Chicago & Alton R. R. Co. v. Riley, 25 Ill. App. 569; Chicago & Alton R. R. Co. v. Connors, 25 Ill. App. 561.

The foregoing decisions are in conformity with the previous decisions of the Supreme Court of the State on the same and kindred subjects. J. N. W. & S. E. R. R. Co. v. Cox, 91 Ill. 500; Nevins v. Peoria, 41 Ill. 502; Gillham v. Madison Co. R. R. Co., 49 Ill. 484; Hicks v. Silliman et al., 93 Ill. 257; Stoddard v. Filgur, 21 Ill. App. 563.

The appellant claims "that the ultimate controversy between the parties is whether the railroad company has the

right to drain its right of way of surplus water by ditches into this (Kilgore) slough, acting skillfully, without negligence, and not leaving its own property." That is not the contention in this case. Fairly stated the question is, can this railroad company select one of five distinct prairie sloughs, draws, depressions or watercourses, intercepted by its road, and by ditching through the banks of four of them, conduct their waters into the one selected. If it can legally ditch four into one, there is no legal reason perceived why it might not ditch four hundred into one.

C. B. Smith, J. This was an action on the case brought by appellee against appellant in the Will County Circuit Court. There are four counts in the declaration, none of them substantially different. The gist of the complaint is that appellant, by digging a ditch along the side of its track for some distance, brought a large volume of water into a slough running through appellee's farm, which did not naturally run through the slough, and by thus increasing the volume of the water in the slough caused it to overflow appellee's land and thereby destroyed his meadow. The second count differs from the other three by alleging that the defendant, by its ditch, cut certain ancient watercourses and diverted the natural flow of the water out of their course through its ditch into the slough and then over plaintiff's farm.

The other counts only allege that by means of this ditch and the building of its road-bed the defendant gathered the surface waters from a large territory and brought it to the slough and thus on plaintiff's land, and that said surface waters would not have naturally gone into the slough and over plaintiff's land but for the ditch dug by defendant. To this declaration the defendant pleaded the general issue. There was also a stipulation in the case that the plaintiff would not claim for any damages accruing to him for more than five years preceding the commencement of the suit.

A trial resulted in a verdict for the plaintiff for $572.40. A motion for a new trial was overruled and appellant brings the record here by appeal for review and assigns the usual

errors.   We will consider only such as have been urged in the argument.

The facts as disclosed in this record are these:   In 1886 the defendant was then the owner of a strip of land running through a level country lying between Braidwood and Wilmington, with numerous sloughs and slight elevations of the land crossing this strip of land, and on this strip defendant had before then built its road and was then operating it.   In that year the defendant, in order to drain its right of way and protect its track, dug the ditch in controversy along the line of road running in a northeasterly direction to Kilgore's slough, and then emptied its ditch into that slough.   Plaintiff's land lay a few rods below where the railroad crossed the slough, and where the ditch emptied its waters into the slough.   The general inclination of the land and flow of water was in a northeasterly direction.   In digging the ditch along the right of way it crossed some three or four sloughs similar to Kilgore's, smaller or larger, and also was cut through higher elevations along the track, so the water might from those sloughs follow the line of the track to Kilgore's slough.

This ditch was all on the right of way of the defendant and was properly made and necessary to the protection of the railroad track and the right of way from the waters falling on the surface and in the sloughs.   There is a dispute in the evidence whether these sloughs, or any of them, were natural watercourses within the legal meaning, or were mere surface waters, gathered in the lower levels of the land.

Counsel for appellant contend very earnestly and in a very able and elaborate argument that the facts disclosed in this record do not show any liability on the part of the defendant.   In taking this position counsel deny, first, that the ditch in controversy diverted any natural watercourse, and thereby caused its waters to flow on plaintiff's land.   It contends that what plaintiff calls watercourses were, in fact, nothing but surface water seeking and lying on the lower levels of the undulating ground, without any of the elements of a natural watercourse, with banks, leaders and outlets, and second, that the water thus drained, being but surface water, the defendant having a right to free itself from it and in so doing

C. & A. R. R. Co. v. Glenney.

throw it on the lower land, it is not liable, under the law, even if damage did result to the lower heritage. In support of this argument and position taken, counsel cite us to a great array of cases from other States which support him. But the law in this State seems to be settled the other way upon the facts as disclosed in this record.

While it is the law of this State that the owner of the dominant heritage may, for the purpose of good husbandry, and equally so for the purpose of good railroading, gather the surface water that falls or flows upon him in a body or in individual channels and let it flow upon the lower heritage so accumulated without making himself liable in damages, yet this right will not give him the right to make new and unnatural ways for even the surface water. This right to protect one's self from the surface water falling on his own land gives him no right to erect dams and throw it back on another. Gillham v. The Madison County R. R. Co., 49 Ia. 84; T., W. & W. R. R. Co. v. Morrison, 71 Ill. 616. Nor to remove natural embankments or cut ditches through natural barriers, so as to increase the flow of surface water on the lower heritage, when it would not have naturally passed over the surface in the direction in which it is taken by the ditch. Hicks v. Silliman, 93 Ill. 255.

These cases are sufficient to show the uniform holding of the Supreme Court of this State on the question involved in this record. The proof is clear that very much water was diverted from its original direction into this ditch and carried to Kilgore's slough, and thence over plaintiff's land, that never could have reached there by surface flowage nor by any other mode except for the ditch along the side of the railroad that had been cut through ridges and embankments, thus bringing the case strictly within the rule laid down in the cases above cited.

But aside from all other considerations upon this branch of the case, we regard ourselves as concluded by the former adjudication in other cases growing out of the same state of facts involved in this record in which the defendant had been held liable. In the former cases the same point of non-liability was urged by the defendant and the point

decided against it. In the former suit between the same parties the court held the defendant liable and affirmed the judgment of the Circuit Court. On appeal to the Supreme Court the judgment was reversed because the Circuit Court refused a proper instruction for the defendant, but we understand the ruling in that case to recognize the right of plaintiff to recover upon proper instructions, although it is not so stated in express words. C. & A. R. R. Co. v. Glenney, 19 Ill. App. 639; C. & A. R. R. Co. v. Glenney, 118 Ill. 487.

The defendant insists further that this claim was barred by the statute of limitations. Whether that be so or not, under a plea of the statute of limitations it is sufficient to say that no plea of that kind was interposed and without that plea this defense could not be made. Defendant insists that the stipulation made on the trial to the effect that plaintiff would not claim damages for any time beyond five years next before the commencement of the suit, was equivalent to such a plea. We do not think this agreement is equivalent to the plea of limitations. It amounted to nothing more than an agreement of the plaintiff to limit his right for the wrongs committed within five years and simply said to the defendant, you need not defend against anything done prior to that time. Such an agreement has not a single element of a plea of the statute of limitations, and, even if it had, the agreement by implication gave the plaintiff the right to recover within five years if he could prove his case. So that, if it be by courtesy called a plea of the statute of limitations, it contains an agreement that destroys its effect, except in so far as it cut the plaintiff off from everything back of five years, and it is therefore wholly immaterial whether it be called a plea or an agreement; its effect is the same. This agreement or plea precluded the defendant from raising the question of limitations raised and presented in the argument.

Upon a careful examination of the instructions given, refused and modified, we find no substantial error. The jury seems to have been fully and correctly instructed.

Finding no substantial error in the record, the judgment is affirmed.

*Judgment affirmed.*