THE EAST ST. LOUIS AND CARONDELET RAILWAY COMPANY

v.

JOHN EISENTRAUT.

*Railroads—Diversion of Water from Natural Course—Injury to Crops —Evidence.*

In an action against a railroad company to recover for injury to plaintiff's crops, caused by its digging a ditch which diverted water from its natural course, this court sustains a verdict for plaintiff.

[Opinion filed February 4, 1890.]

APPEAL from the Circuit Court of St. Clair County; the Hon. WM. H. SNYDER, Judge, presiding.

Messrs. WILDERMAN & HAMILL, for appellant.

Mr. W. C. KUEFFNER, for appellee.

REEVES, P. J. The second count of the declaration upon which a recovery was sought and obtained, alleges that in the month of May, 1887, and prior thereto, plaintiff was possessed of certain lands in St. Clair county situated near to what are called "Falling Springs;" that there was then and always had been a natural watercourse leading from said springs, in a northwesterly direction, not far distant from plaintiff's land and past said land, in which watercourse water was always wont to flow; that plaintiff was then and there cultivating and raising a crop of potatoes, corn, etc., on said land; that defendant had, prior thereto, in the spring of 1887, unlawfully constructed a ditch from said natural watercourse, from a point close to said Falling Springs, toward the land of plaintiff, for the purpose of draining and diverting a part of the water which would naturally flow in said watercourse toward plaintiff's land, and away from their natural course; and that in the month of May, 1887, while the plaintiff was the owner and possessor of said land and cultivating said crops thereon, heavy rains set in, and a large quantity of water, that naturally flowed in said watercourse and would have escaped and run off without damage to the plaintiff's land but for said ditch, was by means of said ditch diverted from its natural course and conducted to and thrown upon plaintiff's land and crops, and the same were greatly damaged. To this statement of the plaintiff's cause of action the defendant filed the general issue, and the trial resulted in a judgment for the plaintiff.

It must, we think, be conceded, if the facts alleged in this count of the declaration find sufficient support in the evidence, the judgment should be affirmed.

The legal principles applicable to a case like this are too well established to require statement or discussion. The controversy is one of fact. The testimony adduced is, as might be expected in such a case, conflicting. Much of it tends to confuse rather than enlighten the issue.

In the bluff, east of the American bottom, are located what are called "Falling Springs." From them issues water at all seasons. In a wet time the amount of the water flowing from

the springs increases, and when there is a heavy rainfall the water comes down the side of the bluff and mingles with that issuing from the springs. Falling Springs Branch is the natural outlet for this water and runs first westerly for a short distance and then in a northerly direction. The railroad track passes along near the bluff and near these springs. A culvert is constructed in the road-bed for the passage of the water naturally flowing through the branch. About the size of this culvert there is some dispute in the testimony but that is not material as no complaint is made in the plaintiff's statement of his cause of action, of the insufficiency of this culvert. The ground of complaint is that the railroad company dug a ditch on the east side of their road-bed from said natural watercourse southwesterly toward plaintiff's land, which carried on to plaintiff's land, in case of heavy rains, water, which, but for the ditch, would have passed off through the branch. The testimony on this point both supports and denies this allegation. Upon this question the plaintiff's evidence is in substance as follows.

Eisentraut testified: In the fall of 1866, I saw the section hands making a ditch from the Falling Springs on east side of track, and I told them not to make it. The ditch was about 150 yards long; it ran southwest, in the same direction as the track; it was about three or four feet from the track and about three feet deep. The bottom of the ditch was lower than the bottom of the watercourse, and went right into the watercourse, and towards my land. The water that before run in the branch, after the ditch was dug, run through the ditch and toward my land.

Joseph Chartrand testified about a ditch dug about seven years ago at same point as the ditch here complained of, and says that when there was a heavy rain the ditch carried the water that naturally would have gone in Falling Springs Branch, southwest onto the land now owned by plaintiff, and he (witness) stopped up the ditch.

Andrew Whitesides testified: I know plaintiff's land; know ditch was there when plaintiff's land was overflowed in May, 1887. The effect of the ditch was to take the water that

naturally went into the branch and carry it toward plaintiff's land.    At the time of the big rain I was in plaintiff's field and saw the water when it came over his land.    I went to see where it came from and found it pouring through the railroad ditch.

Joseph Chartrand testified: Know plaintiff's land and the country about Falling Springs and the location of railroad track.    At the time of the big rain, in May, 1887, I was there, working Mrs. Asnat's land, and the water came through the railroad ditch on the Asnat land, and from there it run to the plaintiff's land and overflowed it.    The overflow ruined his crops.

Philip Thornton testified: Know the situation about Falling Springs.    I don't know the exact date the railroad ditch was made, but it was in 1886.    The railroad company made it. At the time of the heavy rains, in May, 1887, the water came right down through that ditch; the water came down with such rush it backed up hill.    The natural channel of the water from the Springs was toward the north, and this ditch carried it down toward plaintiff's land.

On the other hand, the defendant's witnesses denied the existence of the ditch, and at most claimed there was only the usual depression on the east side of the right of way, made, necessarily, by the construction of the road-bed; that the water that overflowed plaintiff's land did not come through the railroad ditch, and did not come from Falling Springs. The water that damaged plaintiff was shown by certain witnesses to have come from a cave in the bluff, some distance south of Falling Springs.    There is also a difference among the witnesses as to the level of the land about and south of the Springs.    Some say the land falls away from the Springs toward plaintiff's land, while one witness claims that it rises.    The truth seems to be, that the whole country west of the bluff is low and flat, and the water in a freshet will run, if there be no obstruction, in almost any direction.    However, it seems to be established that the natural course for the water about Falling Springs is through the Falling Springs Branch. Whether the railroad company dug a ditch on the east side of

their track that diverted water from about Falling Springs onto plaintiff's land, which otherwise would have flowed off through the branch, was the principal question submitted to the jury, and they found upon this question for the plaintiff, and, as we have seen, though the testimony on this question is in sharp conflict, there is sufficient upon which to base this finding. The jury could not credit *all* these witnesses, so directly contradicting each other.

They had the right to say that they believed those testifying for plaintiff, if they did so believe, and to discredit the testimony offered by defendant upon this controlling question in the case, if they were satisfied the testimony of plaintiff was more reliable. This they must have done to find the verdict which they did find. Even if we should hesitate to come to the same conclusion upon the whole evidence, this would not be a sufficient reason for disturbing the verdict of the jury. To say the most that can be said on appellant's side of this question, the weight of the evidence is not so manifestly and clearly with appellant, that a verdict against it should not be allowed to stand.

The fact that appellant was authorized by its charter to construct a railroad where the same is located, did not give it the right, in such construction, to divert the water along its line, from its natural course; certainly not so as to injure others. If the water that flowed through this ditch would naturally have gone in the same direction, the fact that it passed through the ditch more rapidly and in larger quantities than it would have flowed off naturally would not have rendered appellant liable. This we understand to be the law as now held in this State, but this is not the complaint in this case, and the evidence offered by plaintiff proved that the overflow that damaged plaintiff's crops was caused by water diverted by means of the ditch from its natural course, which was not in the direction of plaintiff's land.

Neither is it claimed that this flooding of plaintiff's land was caused by an obstruction in the natural watercourse which obstructed the flow of the water when it came down in unusual quantities.

The only complaint is that the ditch was so constructed as to divert the water which would have gone in the natural watercourse but for the ditch.

At the time of this heavy rainfall, doubtless, more or less water would have come upon plaintiff's land if this ditch had not been constructed; but giving credit to the plaintiff and his witnesses, the crops would not, from this cause, have been destroyed.

We see no error in the instruction complained of. The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*