## DONK BROS. COAL AND COKE COMPANY

*v.*

## NICHOLAS THIL.

*Opinion filed June 19, 1907.*

1. MASTER AND SERVANT—*what duties of master to servant are personal ones.* The duty of the master to warn his servant of unusual and latent dangers of which the servant is, without fault, ignorant, and the duty of exercising reasonable care to furnish the servant a reasonably safe place to work, are personal duties, and the master cannot escape liability for their negligent performance by entrusting them to other persons.

2. SAME—*when relation of fellow-servants does not exist.* A servant to whom the master has entrusted the performance of a personal duty owing by the master to his other servants, is, as to such duty, the representative of the master, without regard to his grade or rank, and is not, with respect to the performance of such duty, a fellow-servant of those to whom the duty is owing.

3. MINES—*when timbermen are not fellow-servants of a mule driver.* Timbermen in a mine, entrusted by the master with the duty of keeping the entry way of the mine in reasonably safe condition, are the representatives of the master in that regard, and are not fellow-servants of a mule driver who uses such entry, and if, without warning the driver, they place a dynamite charge in the roof of the entry and fire the same while the driver is in the entry, the master is liable for the injuries sustained by the driver.

4. EVIDENCE—*when proof of custom is admissible though not alleged.* As bearing on the question whether or not a mule driver in a mine was exercising due care for his safety, as alleged in his declaration, he may prove the usual custom as to the time for firing shots in the mine entries, even though the declaration does not allege such custom nor aver its violation on the day of the injury.

5. INSTRUCTIONS—*when objection to instruction is waived.* One who allows proof to go to the jury without objection, and permits the court to treat the same as properly before the jury by giving an instruction with reference thereto, cannot raise the question of variance between such proof and the declaration by objecting to the instruction upon that ground.

6. SAME—*word "preponderance" before "evidence" is not essential.* An instruction using the expressions "if you believe from the evidence," "as the jury may believe from the evidence," etc., is not erroneous in omitting to use the word "preponderance" before "evidence."

7. Same—*action of court on cautionary instructions is largely discretionary.* The refusal of a cautionary instruction, such as one advising the jury that the defendant (a corporation) has as much right to fair treatment as the plaintiff, is largely a matter of discretion with the trial court and will not ordinarily be regarded as error.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. B. R. Burroughs, Judge, presiding.

Wise & McNulty, for appellant.

Hadley & Wheeler, and C. H. Burton, for appellee.

Mr. Justice Vickers delivered the opinion of the court:

Appellee recovered a judgment for $2000 for a personal injury received while in the employ of Donk Bros. Coal and Coke Company as a driver in appellant's coal mine. The judgment has been affirmed by the Appellate Court for the Fourth District, and the coal company has prosecuted an appeal to this court.

The declaration consists of two counts, both of which are based upon a breach of the common law duty of appellant to use reasonable care to provide appellee a reasonably safe place in which to perform his work, and a negligent failure of appellant to warn appellee of unusual dangers which were known to appellant and unknown to appellee.

On the day of the accident appellee had gone to the bottom of the shaft and put his mule away for the day. He had to return through the main entry back to the face of the coal to get his coat and bucket. While he was walking through this entry an explosion of dynamite occurred in the roof above his head, knocking him down and seriously injuring him. The shot that injured the appellee had been placed and ignited by two other of the appellant's em-

·ployees, who are designated as timbermen.   Appellant entrusted the duty of looking after the roof and keeping it in safe condition to these timbermen, and the shot that injured appellee was discharged by them in an attempt to discharge the duties required of them by appellant.

The errors assigned which may be considered by this court are:   (1) That the court erred in refusing to direct a verdict for appellant;  (2) that the court erred in admitting certain evidence, over appellant's objection, as to the usual practice or custom in this mine as to the time of firing shots in the entry by the timbermen;  (3) the court erred in giving two instructions for the appellee and in refusing three asked on behalf of appellant.

*First*—In regard to the assignment of error upon the refusal of the court to direct a verdict, appellant's contention is based upon the assumption that the appellee and the timbermen were fellow-servants, and that this court should so hold as a matter of law.   The trial court not only refused to hold that the relation of fellow-servant existed between the appellee and the timbermen as a matter of law, but also refused to submit the question to the jury as one of fact, and this ruling has received the express approval of the Appellate Court.   Among the duties which the master owes to the servant and which he cannot delegate to others so as to absolve himself from liability for negligence in their performance, are the duties of the master to warn the servant of latent defects and dangers which are or ought to be known to the master and of which the servant, without fault, is ignorant, and to exercise reasonable diligence to furnish the servant a reasonably safe place in which to perform his work.   These duties are regarded in the eye of the law as personal duties due from the master to the servant. The authorities all agree that these duties cannot be delegated, and whoever is set to perform them, no matter what be his grade or rank, represents the master in that particular and is not a fellow-servant of those to whom the duty

is due. (2 Cooley on Torts, 1107.) In such cases the test whether the individuals concerned were fellow-servants is not found in the fact that they were engaged in a common employment under the same general contract and paid by the same principal, but is whether the negligent servant, in the act or omission complained of, was by the direction or consent of the master engaged in the discharge of the duty which the master, under the law, personally owed to the injured servant. The liability of the master is determined by the nature of the act in question, and not by a difference in the rank or grade of service between particular servants. If the servant by whose negligence the injury was caused was at the time, with the knowledge, consent and procurement of the master, engaged in the performance of a duty which, under the law, the master owed to the servant, the relation of fellow-servant does not exist between the offending employee and the injured servant. In *Hess* v. *Rosenthal,* 160 Ill. 621, this court, following the rule laid down by Cooley in the citation above made, and also Wharton on the Law of Negligence, (sec. 211,) held that the duty to exercise reasonable care to see that the place furnished for a servant to work is reasonably safe is an obligation toward the servant, and the master is liable for any failure to discharge that duty, whether he undertakes the performance of that duty personally or through another servant. And this doctrine has been announced in many other cases in this court. (*Chicago and Alton Railroad Co.* v. *Scanlan,* 170 Ill. 106; *Chicago and Alton Railroad Co.* v. *Maroney,* 170 id. 520; *Chicago Union Traction Co.* v. *Sawusch,* 218 id. 130; *Mobile and Ohio Railroad Co.* v. *Godfrey,* 155 id. 78.) The same rule of law applies respecting the duty of the master to warn the servant of unusual dangers of which the master has or ought to have knowledge and of which the servant is ignorant.

This question has been regarded as settled in this court ever since the case of *Pullman Palace Car Co.* v. *Laack,* 143

Ill. 242, was decided. The rule is there announced as follows (p. 254) : "If, by reason of the omission to supply the usual and ordinary means to prevent accident, the hazard to its servants was increased, and the change in appliances was not known to the servants, or so open and visible that they, by the exercise of ordinary care, would see and know of it, the legal duty rested upon the master to notify them of the increased danger to which they were thereby exposed; and it being a duty owed by the master to the servant, it could not delegate that duty to another, even though a fellow-servant of appellee, and absolve itself from liability for the injury resulting in consequence of the failure to communicate knowledge to appellee of the increased hazard,"—citing *Chicago, etc. Railroad Co.* v. *Roth,* 112 U. S. 377 ; *Indiana Car Co.* v. *Parker,* 100 Ind. 181 ; Wharton on Negligence, sec. 211 ; Thompson on Negligence, 972 ; 4 Am. & Eng. Ency. of Law, 59, note 3.

In *Chicago and Alton Railroad Co.* v. *Eaton,* 194 Ill. 441, the same question again came before this court where the court had refused to submit the question of fellow-servant to the jury. In that case the section men, in repairing a road-bed, had removed a rail from the track and had failed to give an approaching engine timely warning. The engine was derailed and the engineer killed. In disposing of the contention that the track repairers were fellow-servants with the deceased this court said (p. 445) : "We do not think the court erred in eliminating that question, as the question of fellow-servant is not in the case. It was the duty of appellant to furnish the deceased a reasonably safe track upon which to operate his engine, and it could not delegate that duty. Neither could it delegate the duty of notifying the deceased that the rail had been removed, so as to absolve itself from liability for a failure to communicate such information to the deceased."

The same principle was again applied by this court under the following statement of facts: A car had been left

on a passing-track in such close proximity to the main track that trains could not pass in safety. The agent of the railroad company notified another agent at a station below, on the same line of road, of the obstruction. The agent receiving the notice delivered it to the conductor of a passing freight train. The conductor failed to notify his engineer or fireman and the fireman was killed by reason of the obstruction. The circuit and Appellate Courts held that the failure of the conductor to notify the engineer or fireman was the negligence of a fellow-servant and that there could be no recovery. This court, in reversing these judgments, said: "When the defendant received information of the obstruction it became its duty to use reasonable diligence to warn the deceased of the danger, and that duty was one which it could not relieve itself of by directing his fellow-servant to perform it. It being a duty owing by the master to the servant, it could not delegate that duty to another, even though a fellow-servant of the deceased, and absolve itself from liability for the injury resulting in consequence of the failure to communicate knowledge to the deceased of the increased hazard." *Rogers* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 211 Ill. 126.

Again, in *Baier* v. *Selke,* 211 Ill. 512, the doctrine was announced in the following language (p. 517): "There is a responsibility of the master which does not depend in any degree upon the rank or authority of the negligent servant and is not to be confounded with the exercise of authority by a superior servant,—that is, the responsibility for the acts of a vice-principal representing the master in the discharge of personal duties owing to his servants. Mr. Justice Phillips correctly defined the term 'vice-principal' in *Mobile and Ohio Railroad Co.* v. *Godfrey,* 155 Ill. 78, as one who performs personal duties of the master which can not be delegated, such as the duty to provide reasonably safe machinery and appliances and a reasonably safe place in which to work; to provide for inspection and repair of

premises and appliances, and to inform immature, ignorant or unskilled servants of the dangers of the situation. These are obligations for which the law holds the master personally responsible, and if he attempts to perform the duties through another that other stands in the relation of a vice-principal, and the master is responsible whether the vice-principal is a foreman, a common laborer or whatever his position may be,"—citing *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242; *Libby, McNeill & Libby* v. *Scherman*, 146 id. 540; *Chicago and Alton Railroad Co.* v. *Scanlan*, 170 id. 106; *Hines Lumber Co.* v. *Ligas*, 172 id. 315; *Leonard* v. *Kinnare*, 174 id. 532; *Kewanee Boiler Co.* v. *Erickson*, 181 id. 549.

The doctrine of the foregoing authorities was held in this case, both by the trial and Appellate Courts, to be applicable to the facts disclosed by this record, and in our opinion there is no error in these rulings. The timbermen, who were in the discharge of the duty of keeping the main entryway in a safe condition, were in the discharge of personal duties which appellant owed to appellee, and in the performance of these duties the timbermen were vice-principals and the direct representatives of the appellant. Any negligence of the timbermen connected with the duty which appellant owed to appellee, and the performance of which had been entrusted by appellant to the timbermen, was the negligence of appellant. Appellee had no knowledge that the shot had been placed in the roof of the main entry. He was rightfully passing through the main entry at the time of the injury, and his ignorance of the danger cannot be imputed to a want of ordinary care on his part. The timbermen had drilled the hole and placed the shot in the rock of the roof and had ignited the fuse for the purpose of exploding the dynamite. Under such circumstances they were guilty of culpable negligence in not giving appellee warning of the danger of which he was ignorant. Under such circumstances there is no ground to support appellant's

contention that the timbermen were fellow-servants of appellee, and there was no error in refusing to direct a verdict nor in refusing to submit the question of fellow-servants to the jury.

*Second*—Appellant insists that the court erred in admitting evidence of the usual and customary hours for firing shots by the timbermen in the entries of the mine. The contention on this point is that there was no averment in the declaration of any custom, or that the shot in question was fired in violation of such custom, and therefore negligent. The general and fundamental rule that the evidence must correspond with the allegations is invoked in support of this contention. It is true there is no averment in the declaration charging that the firing of the shot was negligent because fired in violation of an established custom of the mine, but there is an averment in the declaration which this evidence had a tendency to prove. Appellee averred, and it was incumbent on him to prove, that he was in the exercise of due care for his own safety at the time of his injury, and as bearing upon this question it was proper to prove that in view of the usual custom of the mine appellee had no reason to expect that a shot would be fired in the entry at the particular time in question. Suppose appellant could have shown that it was an established and well known custom in that mine to fire shots in the entry at a given time, say three o'clock; that appellee had been at work in the mine for a number of years and was familiar with this custom, and that, notwithstanding his knowledge in this regard, he voluntarily went into the entry at three o'clock and was injured by an explosion; would not this custom, and appellee's knowledge, and his going into the entry at the exact time when he had every reason to expect the shots would be fired, have a tendency to prove a want of ordinary care on his part? On the other hand, if this custom prevailed and appellee went into the entry at 2:30 P. M., half an hour before he had any reason to apprehend that the

shots would be fired, may he not show what the usual and customary firing time was and that he went in at a different hour, in support of the averment that he was in the exercise of reasonable care at and before the time of the injury? There was no error in admitting the evidence of the usual time when shots were fired in this entry.

*Third*—It is next contended that the court erred in giving instructions 1 and 2 for appellee. The instructions complained of were as follows:

1. "The court instructs the jury that if you find for the plaintiff you will be required to determine the amount of his damages. In determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury have a right to and they should take into consideration all the facts and circumstances as proven by the evidence before them; the nature and extent of plaintiff's physical injuries, if any, so far as the same are shown by the evidence; his sufferings in body, if any, resulting from such physical injuries, as the jury may believe, from the evidence before them in this case, he has sustained by reason of such injuries; his loss of time and inability to work, if any, on account of such injuries; all moneys he necessarily expended or became liable for, for doctor's bills, if any, while being treated for such injuries; and may find for him such sums as in the judgment of the jury, under the evidence and instructions of the court in this case, will be a fair compensation for the injuries he has sustained or will sustain, if any, so far as such damages or injuries, if any, are claimed and alleged in the declaration.

2. "If the jury believe, from the evidence and under the instructions of the court, that the plaintiff has made out his case as laid in the declaration, or either count thereof, they must find for the plaintiff."

The objections urged against the first of the above instructions are, that there is no evidence that appellee has sustained any permanent damages; that there was no aver-

228—16

ment in the declaration that appellee had become liable to
pay any physician's bill for medical treatment, the averment
on this point being that he had paid the physician's bill;
that the instruction does not confine the jury to the evidence
but permits the jury to draw on their imaginations and fix
damages as they see fit, and that the instruction does not
require the jury to base their findings on the weight of the
evidence. It is said that the instruction is open to the ob-
jection held fatal to the instruction in *Muren Coal and Ice
Co.* v. *Howell,* 204 Ill. 515. These objections need not be
considered separately. To do so would serve no useful pur-
pose and would unnecessarily extend this opinion. All of
them have received our careful consideration, with the re-
sult that in our opinion none of them can be sustained. In-
structions similar to this one have been before this court
frequently and have been uniformly sustained. (*Hannibal
and St. Joseph Railroad Co.* v. *Martin,* 111 Ill. 219; *Chi-
cago City Railway Co.* v. *Taylor,* 170 id. 49; *West Chicago
Street Railroad Co.* v. *Johnson,* 180 id. 285; *Cicero and
Proviso Street Railway Co.* v. *Brown,* 193 id. 274.) In the
cases above cited some of the same objections made here
were considered and decided contrary to the appellant's con-
tention.

In regard to the objection that the instruction authorized
a recovery for medical fees incurred but not paid, we are
of the opinion that appellant has waived its right to raise
this question. The declaration claimed damages for medical
bills paid. On the cross-examination of one of the phy-
sicians appellant drew out the fact that the bill had been
incurred but not paid. Conceding that this evidence was
inadmissible under the declaration, appellant should have
moved the court to exclude all the evidence on the subject
of medical bills when the fact developed that the bills had
not been paid, on account of a variance between the proofs
on this point and the declaration. This would have raised
the question whether a variance existed, and had the court

decided against appellee he might have asked and obtained leave to amend his declaration to correspond with the facts. It would be manifestly unfair to permit a party to sit by and allow proof to go to the jury, and then, when the court treats such evidence as properly before the jury by instructing in relation thereto, to raise the question of a variance by objection to the instruction.

The objection that the instruction uses the expression, "as the jury may believe from the evidence," omitting the word "preponderance" before the word "evidence," we do not regard as tenable. This form of expression has been employed so long by courts and lawyers as to become a fixed practice. In fact, appellant's counsel employ the expression "if you believe from the evidence," or equivalent phrases, more than a dozen times in the instructions asked for appellant, and in every instance the word "preponderance" is omitted. "If you believe from the evidence" means no more nor no less than "if you believe from a preponderance of the evidence." The fact that the belief of the jury is based on the evidence is the essential thing. The fact that the jury have a fixed belief based on the evidence, necessarily presupposes that the preponderance of the evidence is, at least in the opinion of the jury, in accordance with such belief.

There was evidence that the appellee was still suffering from his injuries at the time of the trial, hence the objection that there was no evidence of future injury cannot be sustained.

The foregoing discussion disposes of the first objection made to instruction numbered 2. And the second objection made thereto, that the instruction is erroneous because the jury are referred to the declaration is equally untenable. This instruction is supported by the case of *Illinois Central Railroad Co.* v. *King*, 179 Ill. 91, which is relied on by appellant as an authority against it, and by many other cases in this court, the latest of which is *Kirk & Co.* v. *Jajko*, 224

Ill. 338. We see no reasons for departing from our previous decisions on this question.

The errors assigned upon the refusal to give certain instructions requested by appellant have virtually been disposed of by what has been said in regard to the admission of the evidence as to the customary time of firing shots in the entry and in regard to the fellow-servant question, and need not be repeated.

Instruction designated as "E," which told the jury that the defendant had as much right to fair treatment as the plaintiff, etc., might have been given with propriety, and no doubt would have been had the trial court believed such a cautionary instruction were necessary, but the giving of such an instruction must be left to the trial court. Instructions of this character, which are in the nature of a lecture on collateral matters or which caution the jury against prejudice or favoritism, are left to the sound discretion of the trial court, and a refusal to give them cannot ordinarily be assigned as error. *Birmingham Fire Ins. Co.* v. *Pulver,* 126 Ill. 329.

Finding no reversible error in the record the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*