## Ada D. Brennan, Appellee, v. City of Streator, Appellant.

### Gen. No. 5487.

1. INSTRUCTIONS—*how to be construed.* The instructions are to be construed as a series; they may supplement each other and the omissions of one may be supplied by the contents of another.

2. INSTRUCTIONS—*when defining obligation of city with respect to its streets not erroneous.* An instruction which defines to the jury the obligation of a city with respect to its streets need not be limited to those exercising ordinary care in their use, where such obligation to exercise ordinary care is specified in other instructions given.

3. INSTRUCTIONS—*when omission of element of notice will not reverse.* In an action for a sidewalk injury against a city if actual notice of defective conditions is established the omission in an instruction of the element of notice is not harmful.

4. INSTRUCTIONS—*when cannot be complained of as authorizing excessive allowance.* If an instruction fail to limit the jury to the amount of damages claimed for medical expenses in the declaration the point cannot be urged on review if the excess of proof made in the trial court was not objected to.

5. VERDICTS—*when not excessive.* *Held,* in an action for personal injuries, that a verdict of $3500 was not excessive where it appeared that the plaintiff by reason of a fall upon a defective sidewalk was seriously injured, was rendered incapable of again becoming a mother and suffered from a serious impairment of her nervous system.

Action in case for personal injuries. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed March 13, 1912.

GEORGE E. GLASS, for appellant; BOYS, OSBORN & GRIGGS, of counsel.

GEORGE F. BELFORD and BROWNE & WILEY, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Mrs. Ada D. Brennan caught her foot under a water plug near a sidewalk in the city of Streator in the evening of July 7, 1906, and was thereby caused to fall and was injured and brought this suit against the city of Streator to recover damages for said injuries and had a verdict and a judgment for $5,000, from which the city appeals. It claims that the facts do not create a cause of action against appellant; that the court erred in rulings upon instructions; and that the damages are excessive.

Sterling street in said city runs north and south and is crossed by Wilson street and, next south of that, by Livingston street. Appellee and her husband and children lived on the east side of Sterling street between Wilson and Livingston streets and just south of the middle of the block, and had lived there less than three months when this accident occurred. When appellee went to town prior to this accident, she usually took the car either at the middle of the block and went north on the car or went south to Livingston street and then turned off on Livingston and went by the home of a relative. She had been along the sidewalk between her home and Wilson street but two or three times and had not noticed this water plug. On this side of the street in that block the sidewalk began about one foot west of the lot line and was

about five feet in width, made of brick. Then there was a berm 10 feet or more wide between the sidewalk and the curb, in which was a row of trees two or three feet west of the sidewalk. Next west of the brick sidewalk was a space one and a half or two feet wide, worn down and packed by the travel of foot passengers. Forty-seven feet south of the south line of Wilson street and at a distance variously estimated at from one to three inches west of the brick border of the sidewalk, was a water plug which stood from three to five inches above the ground, the pipe of which had an outside diameter of three and one-half inches and the cap on top a diameter of five inches. At eight o'clock of that evening appellee left her home intending to take a street car and go north on Sterling street. No car appeared to be coming, and she walked on north beyond the middle of the block on the sidewalk. She then discovered the light of an approaching street car, flashing upon the street ahead of her, and wished to reach the corner of Sterling and Wilson streets in time to take that car. Four women were going north ahead of her on the sidewalk, occupying the entire width. She started to go around them and caught the toe of her left foot under the cap of this water plug and was thrown and hurt. There was no street light at the corner of Sterling and Wilson streets and the moon was not up. The water plug had been in that place for several years. The superintendent of streets had been in that office more than one year and had known of the location of this water plug at that place all the time he had held that office. The plug was in the tramped and travelled portion of the street immediately west of the sidewalk. This space had long been tramped and travelled by the public, and was in such a condition that the proper officers of the city could not have failed to know that the public travelled in that space. The location of the water plug, so near the sidewalk, made it dangerous

to a pedestrian who might have occasion to walk on the travelled way immediately west of the sidewalk or to pass around people occupying the entire walk. It was more dangerous in the night time than in the day time, and was more dangerous than if it had been a much larger object, easily visible to the eye. We adhere to the views expressed by us in the City of Rock Island v. Larkin, 136 Ill. App. 579, and hold that the proof made a case for submission to the jury of the question whether the city was negligent in permitting that obstruction to be in that place where foot passengers might often travel in the night time. It was also a proper question for the jury whether appellee was in the exercise of due care for her own safety, and in view of all the evidence above stated, they could not well have found her guilty of any lack of due care.

Appellant complains of the first instruction, given for appellee. It merely stated what the suit was and what appellee alleged and it stated appellee's allegations correctly. It is argued that the jury would understand from it that appellee was in the exercise of due care. It is not subject to that construction. It states that appellee alleges that she was injured while in the exercise of due care. It does not state what the issues were nor what was required to be proved to make a case, and we see no reason why it should have been tendered or given, but we are of opinion that it was harmless. The second instruction stated the duty of the city to use reasonable care to maintain its streets in reasonably good repair, so as to render its sidewalks reasonably safe for persons passing over the same. It is argued that it should have limited this duty of the city to those who were themselves exercising due care. The fourth instruction, given for appellee, required her to have used all due care for her own safety in order to recover. The sixth instruction, given for appellee, defined due and

ordinary care. The ninth instruction, as modified, and given for appellant, stated that in order to find for plaintiff they must believe from the evidence, among other things, that when plaintiff stepped off the sidewalk and against the stop box she was in the exercise of due care on her part and was thereby guilty of no negligence which in any way contributed to the injury of which she complains; and that unless the jury so believed from the evidence, they must find a verdict for appellant. An instruction like instruction No. 2 was assailed on the same ground in City of Sandwich v. Dolan, 141 Ill. 435, and it was there held to be a sufficiently accurate statement of the duty of the city, when given in connection with other instructions requiring the exercise of ordinary care by the injured foot passenger as a condition precedent to the right of recovery. One of the objections to appellee's instruction No. 3 is answered in the same way. Said instruction No. 3 also required of the city reasonable care to keep in reasonably good repair those parts of its streets immediately abutting and in close proximity to the edges of public sidewalks. We think this instruction is correct as applied to the locality of this obstruction, close to the edge of the brick sidewalk and in the way which had long been travelled by the public on foot, to the knowledge of the city.

Appellee's instruction No. 4 is criticised because it treats appellee as ''passing over said sidewalk'' at the time in question. The proof is that she had been traveling upon said walk and that her right foot still rested upon the brick walk when the toe of her left shoe caught under the top of the water plug, situated from one to three inches from the brick walk, and while she was in the act of starting to pass around the four women who occupied the entire width of the brick walk ahead of her. That language of the instruction was therefore justified by the evidence. It

is argued that said instruction No. 4 does not require notice to the city. It does require, besides various other things, that in order for plaintiff to recover it was necessary to show by the greater weight of the evidence that permitting said water plug to be and remain in said place was negligence on the part of the city, and this could not be, under other instructions, unless actual or constructive notice was established. As the plug had been there at least four years the jury could not have found otherwise than that constructive notice was established, and as it was shown without contradiction that the superintendent of streets had known of the existence of said plug at said place for over one year, actual notice was also established. Therefore the failure to embody the element of notice in this instruction was not harmful to appellant. The 8th instruction on the measure of damages is objected to on the ground that when it uses the words "under all the evidence and instructions of the court in this case," it thereby authorizes the jury to find the facts from the instructions. This contention we consider unsound. This instruction in substantially those words has been approved in many cases, including Cicero Street Ry. Co. v. Brown, 193 Ill. 274; National Enameling Co. v. McCorkle, 219 Ill. 557; and Donk Brothers Coal Co. v. Thil, 228 Ill. 233. This instruction also authorized the jury to allow appellee all moneys she had necessarily expended or for which she had become liable for doctor's bills while being treated for such injuries, in so far as they were shown by the preponderance of the evidence. Appellee's attending physician testified that at the time of the trial she owed him for attendance and services rendered in connection with this injury some $375 or $400, he thought, but he did not remember how much it was. The declaration in each count alleged that appellee had laid out and expended divers sums of money, amounting to $300 in endeavoring to be healed

of said injuries. Appellant argues that under this instruction the jury could have awarded $375 or $400, while the amount recoverable should have been limited in the instruction to $300, the sum named in the declaration. It will be seen that the doctor testified that he did not know how much she owed him. No question of this kind was raised in the court below when the amount specified in the declaration as expended for medical services could have been amended. Moreover the closing words of the instruction only allowed a recovery so far as such damages are claimed and alleged in the declaration. We are of opinion that no error was committed on this subject which is now available to appellant. Appellant's instruction No. 13 as offered, required among other things that the jury should believe from the evidence that said obstruction was wilfully placed there by the city or allowed by it to remain if so placed by another. The court gave the instruction after striking out the word "wilfully." The declaration did not charge that the city placed the obstruction there, nor that the city had done anything wilfully, and the amendment was proper.

It is argued that the damages are excessive. At the time of this injury appellee was about twenty-eight and a half years old, was a wife and the mother of three children. She had been in good health theretofore, except that she was unusually nervous, had had peritonitis some seven years before and had been operated upon for appendicitis in a hospital some three years before. She was unconscious when picked up from the street, suffered great pain thereafter, had certain external bruises, was confined to her bed for some weeks and thereafter to her house for some time. Appellee testified that her injuries were followed by a cessation of the menstrual flow for three months and then again for five months and then for seven months and that menstruation had entirely ceased for

the two years preceding the trial. She was corroborated in this by her attending physician, and he and two other physicians who examined her twice before the trial testified that her uterus was atrophied and that in their opinion the menopause or change of life had taken place in her, and that she would have no more children, and they attributed this to shock from some injury. They also testified to her great nervousness, which they attributed to this injury, and which they considered permanent, and her attending physician testified that at one time since this injury he feared that she would become insane therefrom. · Two physicians who had never examined appellee testified that in their opinion such a condition as was described could not result from such a fall and that in their opinion the physicians had not made a sufficiently thorough examination and that appellee had not received proper medical treatment, and that in their opinion, if she were properly treated, the functions of maternity would be restored, and that in their opinion she was suffering from neurasthenia and hysteria. It is difficult to understand how such serious results could follow a fall in which no bones were broken, and we would be better satisfied if the damages had been fixed at about $3,500. Nevertheless, if by this fall appellee at the age of twenty-eight and one-half years has been rendered incapable of again becoming a mother, or if her nervous condition is as described by her attending physician and is permanent and is attributable to this fall, then we cannot say that this verdict is excessive.

The judgment is affirmed.

*Affirmed.*